1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

2

3   ------------------------------------X
                              :

4   UNITED STATES OF AMERICA,      :
                              :  11-CV-06374 (DLI)

5                              :

6              v.           :  225 Cadman Plaza East
                            :  Brooklyn, New York

7   RAFF & BECKER, LLP, *et al.*,  :
                            :  October 25, 2012

8                Defendants.  :
   ------------------------------------X

9

10          TRANSCRIPT OF CRIMINAL CAUSE FOR CONFERENCE
           BEFORE THE HONORABLE VIKTOR V. POHORELSKY
              UNITED STATES MAGISTRATE JUDGE

11

12  APPEARANCES:

13  For William J. Rold:     STEVEN A. ROSEN, ESQ.
                       Law Offices of Steven A. Rosen

14                      271 Madison Avenue, Suite 1404
                      New York, New York  10016

15

16                      JANE BECKER, ESQ.
                      PO Box 9023914
                      San Juan, Puerto Rico  00902-3914

17

18  For the Government:     KEVAN CLEARY, ESQ., AUSA
                      U.S. Attorney's Office

19                      Eastern District of New York
                      271 Cadman Plaza East

20                      Brooklyn, New York  11201

21  For Governor Cuomo:     ADAM S. LURIE, ESQ.
                      Cadwalader

22                      700 Sixth Street NW
                      Washington, D.C.  20001

23                      HOWARD R. HAWKINS, JR., ESQ.
                      Cadwalader

24                      One World Financial Center
                      New York, New York  10281

25

                      (Appearances continue on next page.)

Proceedings recorded by electronic sound recording, transcript produced by transcription service

```
 1                                                              2

 2

 3    APPEARANCES (Continued):

 4    For Leonard Polletta:        HANAN KOLKO, ESQ.
                                   MELISSA WOODS, ESQ.
 5                                 Meyer Suozzi English Klein
                                   1350 Broadway
 6                                 Suite 501
                                   New York, New York  10018
 7

      For M. Patricia Smith:       KATHERINE ROSENFELD, ESQ.
 8                                 Emery, Celli, Brinckerhoff &
                                     Abady, LLP
 9                                 75 Rockerfeller Plaza, 20th Floor
                                   New York, New York  10019
10

      For Raff & Becker, LLP:      ANTHONY PROSCIA, ESQ.
11                                 Lewis Brisbois Bisgaard &
                                     Smith, LLP
12                                 77 Water Street, Suite 2100
                                   New York, New York  10005
13

14    Court Transcriber:           RUTH ANN HAGER, C.E.T.**D-641
                                   TypeWrite Word Processing Service
15                                 211 N. Milton Road
                                   Saratoga Springs, New York  12866
16

17

18

19

20

21

22

23

24

25
```

3

1   (Proceedings began 11:06 a.m.)

2           THE CLERK:  Civil cause for a status conference in

3   CV-11-06374, United States of America, *Ex Rel*. v. Raff &

4   Becker, *et al*.

5           Counsel, please state your appearances for the

6   record.

7           MR. ROSEN:  Sure.  For William Rold, the relator,

8   I'm Steven Rosen.

9           MS. BECKER:  William Rold, Relator, Jane Becker.

10           MR. CLEARY:  For the United States, Kevan Cleary,

11   Assistant U.S. Attorney.

12           MR. LURIE:  Good morning, Your Honor.  Adam Lurie

13   from Cadwalader for Governor Cuomo.

14           MR. HAWKINS:  Good morning, Your Honor.  Howard

15   Hawkins from Cadwalader.

16           THE COURT:  I'm sorry?

17           MR. HAWKINS:  Howard Hawkins also from Cadwalader.

18           THE COURT:  And also for --

19           MR. HAWKINS:  Also for Governor Cuomo.

20           MR. KOLKO:  Good morning, Your Honor.  Hanan Kolko

21   from Meyer Suozzi English & Klein for defendant Leonard

22   Polletta.

23           THE COURT:  Just give me a moment.  If you'd be kind

24   enough to give me your name again.

25           MR. KOLKO:  Sure.  Hanan, H-A-N-A-N, last name is

4

1    Kolko, K-O-L-K-O.

2              THE COURT:  For Polletta.

3              MR. KOLKO:  For defendant Polletta.  Thank you,

4    Judge.

5              MS. WOODS:  Hi.  Melissa Woods also from Meyer

6    Suozzi for Defendant Polletta.

7              MS. ROSENFELD:  Good morning.  Katherine Rosenfeld

8    from Emery, Celli, Brinckerhoff & Abady for Defendant M.

9    Patricia Smith.

10             THE COURT:  That's Katherine with a K?

11             MS. ROSENFELD:  Yes, Your Honor.  Katherine

12   Rosenfeld.

13             THE COURT:  And I didn't get your client.

14             MS. ROSENFELD:  Patricia Smith, Your Honor.

15             THE COURT:  Okay.

16             MS. SMITH:  Thank you.

17             MR. PROSCIA:  Good morning, Your Honor.  Anthony

18   Proscia, P-R-O-S-C-I-A, from Lewis Brisbois Bisgaard & Smith

19   on behalf of defendants Raff & Becker, LLP, David A. Raff and

20   Robert L. Becker.

21             THE CLERK:  Perhaps since we have so many people

22   here today I would ask that each time before you speak if you

23   would state your name for the record.  Don't need the client

24   and firm, but just your name.  Thanks.

25             THE COURT:  All right.  Well, the two purposes of

5

1  the conference today are first educate me a little bit about

2  the claims and what the status of the case is.  I gather there

3  were at least some proceedings before Judge Irizarry before

4  she -- or were there?  Maybe there weren't.  But there may --

5            MS. BECKER:  There was a conference regarding the

6  breaching of the seal by New York Attorney General.

7            THE COURT:  Okay.  And then -- and then --

8            MS. BECKER:  Jane Becker.

9            THE COURT:  Thank you.  And then there's this

10  motion -- styles motion for protective order.  It's actually

11  seeking somewhat different relief, but seeking some order by

12  the Court directing one of the state agencies to cease from

13  barring their employees from discussing the matter, so -- and

14  to set a schedule for dealing with that if that is necessary.

15            So let me start with the first one.  Let me ask the

16  plaintiffs if you can briefly tell me the claim or the claims

17  and what has happened before Judge Irizarry.

18            MS. BECKER:  Your Honor, Jane Becker.  The claim is

19  a hybrid 1983 *qui tam* case under the New York and U.S. *qui tam*

20  statutes.  The 1983 claim is a claim that Judge Rold was

21  harassed and finally dismissed because of his exercise of his

22  First Amendment rights while he was chief judge of the

23  Unemployment Insurance Appeals Board.  There are also claims

24  for violations of the Family Leave Act and claims for

25  interference with witnesses under 1985.

1          With respect to the *qui tam* claims --

2          THE COURT:  Let me back up.  You said there's

3  Section 1983 case claims and I guess Section 1983 claims are

4  that your client was harassed and subsequently dismissed

5  because of statements he made, so it's violation of his First

6  Amendment rights.

7          MS. BECKER:  Exactly.

8          THE COURT:  And you said something about a Section

9  1985 claim.

10          MS. BECKER:  For interference with witnesses.

11          THE COURT:  And what is that -- what's the theory

12  there?

13          MS. BECKER:  The theory there is that there -- there

14  is a claim regarding a -- one of the appeals judges who was

15  found to have been forging the signatures of some of his

16  subordinates.  And Judge --

17          THE COURT:  I guess I'm trying to figure out what's

18  the constitutional violation.  Doesn't Section 1985 require

19  constitutional violation?

20          MS. BECKER:  Exactly.

21          THE COURT:  Okay.  And what's the constitut -- I'm

22  just trying to figure out what constitutional violation

23  emanates from an interference with witnesses.

24          MS. BECKER:  Well, but what -- 1985 specifically

25  talks about interference with witnesses.  And that the

7

1 constitutional violation is the due process rights of the

2 claimants whose decisions were changed so that -- and in

3 almost all cases the claimants lost their claims because of

4 the decisions in which that appeals judge interfered with and

5 changed the decisions and then forged the names of the

6 other -- of his subordinate judges.

7     THE COURT:  Okay.  So --

8     MS. BECKER:  And --

9     THE COURT:  -- is that a claim on behalf of --

10 that's a claim on behalf of people other than Judge Rold then.

11     MS. BECKER:  Well, it's a claim on behalf of Judge

12 Rold because Judge Rold complained about this happening and he

13 reported it to the Inspector General's Office and that was

14 when there was eventually the determination regarding that.

15 And he also asked that there be further disciplinary actions

16 taken against this judge, which the Secretary of Labor refused

17 to take.  And the judge was -- there's also with that a *qui*

18 *tam* claim because this judge was allowed to ostensibly work

19 from home but did no work, so his salary was being paid by the

20 Federal Government yet no work was being received --

21 benefitting the Federal Government for monies that the Federal

22 Government paid for that judge's salary.

23     THE COURT:  Okay.  All right.  So the -- the *qui tam*

24 part of this case is seeking to recover on behalf of the

25 Government all the monies paid to that judge?

1          MS. BECKER:  That's a small part of it.  The larger

2    part of it, Your Honor, is -- in terms of the federal *qui tam*

3    cases -- claims is the fact that the amelioration plan that

4    was negotiated between plaintiff's defendants and defendants

5    in the Barcia [Ph.] litigation requires that approximately a

6    quarter of -- the way that it was worked out, it requires that

7    approximately a quarter of the budget of the depart -- of the

8    Unemployment Appeals Board be spent on monitoring rather than

9    hearing the claims of unemployment seekers.  And since the

10   Federal Government pays that money to the State of New York to

11   pay for the judges to hear cases, not to audit their work,

12   that money we allege constitutes a false claim.

13          Of course, you know, New York could have paid --

14   could pay that money out of its own budget but it doesn't; it

15   pays the money out of fed -- it pays those judges out of

16   federal money but then doesn't use the federal money for the

17   way that it was intended to be used.

18          THE COURT:  Okay.  And that was -- you said

19   something -- there was some kind of negotiation you say that

20   led to that -- to that --

21          MS. BECKER:  Amelioration plan?

22          THE COURT:  Yeah.

23          MS. BECKER:  Yeah.

24          THE COURT:  I'm not sure I understand what an

25   amelioration plan is, but there was some --

1          MS. BECKER:  That is regarding the class action

2    litigation.  In that litigation the parties were charged

3    with --

4          THE COURT:  So the amelioration plan resulted from a

5    resolution of a class action.

6          MS. BECKER:  Yes.

7          THE COURT:  Okay.  Okay.  That's all I --

8          MS. BECKER:  That's a short answer to that.

9          THE COURT:  Right.  So -- and which witnesses were

10   interfered with and at what stage here?

11         MS. BECKER:  In terms of the 1985 --

12         THE COURT:  Yes.  I'm trying --

13         MS. BECKER:  -- plan?

14         THE COURT:  Because you said it was initially a 1983

15   claim and a *qui tam*, but then you also said there was a 1985

16   claim.

17         MS. BECKER:  Right.

18         THE COURT:  So there's actually a 1983 claim, a 1985

19   claim, and *qui tam* claims.

20         MS. BECKER:  Exactly.

21         THE COURT:  Any others?

22         MS. BECKER:  There's a Family --

23         THE COURT:  Oh, Family Medical Leave Act claim?

24         MS. BECKER:  Exactly.

25         THE COURT:  Okay.  And I've -- in what -- at what

1  stage of this -- of these proceedings was there interference

2  with witnesses and -- I mean, how does that play in, I guess,

3  is what I'm trying to figure out.

4           MS. BECKER:  Well, the interference with the

5  witnesses came when Judge Rold was investigating the actions

6  of the supervisory appellate judge who had been forging the

7  signatures of his subordinates.

8           THE COURT:  And what do you mean?  What was the

9  interference?

10          MS. BECKER:  They weren't -- he wasn't allowed to

11 speak with them.  Documents were destroyed repeatedly, as in

12 five times.

13          THE COURT:  Okay.

14          MS. BECKER:  And his -- when he tried to report it

15 to the Inspector General, the -- his report was intercepted

16 and he was told that he was not to communicate with the

17 Inspector General's Office.

18          THE COURT:  Okay.  So the Government has chosen to

19 join --

20          UNKNOWN SPEAKER:  No.

21          THE COURT:  Oh, okay.

22          UNKNOWN SPEAKER:  Not yet, Judge.

23          THE COURT:  Oh, I see.

24          UNKNOWN SPEAKER:  We have till November 30th to make

25 that decision.

11

1          THE COURT:  Oh, I see.  Okay.  So is this still

2    under seal?

3          MS. BECKER:  No.

4          UNKNOWN SPEAKER:  No, it's been opened up because

5    there was a mixture of claims and there was a problem of

6    timing.

7          THE COURT:  All right.

8          UNKNOWN SPEAKER:  So we just --

9          THE COURT:  So you haven't made up your mind yet.

10   Plus it already escaped.  The Attorney General let it happen,

11   right, so nobody knew about it.

12         THE COURT:  Okay.  So -- all right, but in any event

13   you haven't made up your mind yet.

14         UNKNOWN SPEAKER:  No.

15         THE COURT:  Okay.

16         UNKNOWN SPEAKER:  No, Judge.

17         THE COURT:  And what happened?  I should return now

18   because I -- the other question I had was what happened with

19   Judge -- what's happened before Judge Irizarry so far?

20         MS. BECKER:  There -- she held a conference, not

21   really a hearing because witnesses weren't called, but when

22   the New York Attorney General reported to Judge Irizarry that

23   the seal had been broken she held a conference with respect to

24   the breaking of the seal.

25         THE COURT:  I see.  And what happened?

1              MS. BECKER:  She held a conference and didn't --
2    there -- I'm not sure whether she intends to make
3    determinations with respect to that or whether that will just
4    stay that.
5              THE COURT:  So at this point the seal was broken by
6    someone unknown?
7              UNKNOWN SPEAKER:  Unknown --
8              MS. BECKER:  No, no.  Not unknown.
9              UNKNOWN SPEAKER:  No, the AG.
10             MS. BECKER:  The AG.
11             THE COURT:  Oh.
12             MS. BECKER:  And that was the purpose of the
13   conference was to determine who within the AG's office had
14   broken the seal and the judge ferreted that out.  Not that the
15   AG was trying to hide anything, but in fact the AG was very
16   forthcoming and provided all that information.
17             THE COURT:  So it's yet to be seen what's going to
18   happen as a result of that.
19             MS. BECKER:  Exactly.
20             THE COURT:  Okay.  Okay.  So this -- thank you.  And
21   are you related to any of the defendants?
22             MS. BECKER:  Not that I know of.
23             THE COURT:  Okay.  All right.  So does anybody else
24   want to be heard on -- well, at this point -- thank you,
25   Ms. Becker.  You may be seated.  And by the way, nobody

1  else -- you don't really have to stand.  You're free to, but

2  actually the closer you are to the microphones the better the

3  record anyway, so you're free to remain seated.

4          As I understand, the time to respond has been

5  extended by stipulation for virtually everybody, right?  Is

6  that -- all right.  So is it anticipated there'll be motions

7  to dismiss all or part of the claims or do you -- have you

8  made up your minds yet?

9          MR. LURIE:  Yes, Your Honor.  This is Adam Lurie.

10  There's currently a motion to transfer the matter to the

11  Southern District.

12          THE COURT:  Yes, that's right.  Thank you for

13  reminding me.

14          MR. LURIE:  And the --

15          THE COURT:  That has been briefed and is before

16  Judge Irizarry already?

17          MR. LURIE:  It's not been briefed.  The defense

18  motions and briefs have been served on plaintiff's counsel in

19  response.

20          THE COURT:  Okay.  And just as a reminder, I know --

21  I mean, I was told this already, but I -- or I read it

22  somewhere, but have you also been given a briefing schedule

23  for the motions to dismiss?  So --

24          MR. LURIE:  Yes, well --

25          THE COURT:  -- then that's before Judge Irizarry.

1   Did you make a request for a premotion conference?  Usually

2   she requires one.

3           MR. LURIE:  The only date we have, Your Honor, is

4   the motion to respond to the complaint and that is --

5           THE COURT:  I see.

6           MR. LURIE:  -- on December 15th.

7           THE COURT:  So what -- then what you're going to end

8   up doing is write a letter to her for a premotion conference

9   at that point, I guess.

10          MR. LURIE:  I assume, Your Honor.

11          THE COURT:  But then I gather that to some extent

12  the question of whether this -- that motion should be heard

13  here or elsewhere has got to be on the table as well, so kind

14  of complicated.

15          All right.  All right.  Does anybody else -- I mean,

16  does anybody want to weigh in at all on -- I mean, I've got a

17  general understanding of the claims.  I don't know if there's

18  any reason to go into any detail about your defenses at this

19  point since that, I suppose, is going to be illuminated by the

20  answers to the complaint and the motion practice that's still

21  to come, so I don't know that I need to tease that out right

22  now unless somebody feels like they want to be heard on that.

23  Okay.

24          So let me turn to the issue raised by the motions --

25  the motion that the plaintiff -- or I'll say the relator --

1  the relator has made concerning instructions given I think to

2  the Department of -- Department of Labor -- the New York

3  Department of Labor given by the -- an agency head or someone

4  in that office to the employees there to -- not to respond or

5  not to speak to anyone about the claims here.  So who is

6  handling that on behalf of the State?

7          MR. LURIE:  Your Honor, Adam Lurie for

8  [indiscernible].

9          THE COURT:  Okay.

10          MR. LURIE:  Your Honor, we are -- we're basically

11  prepared to do most, if not everything, that the plaintiff

12  wants voluntarily.

13          THE COURT:  Oh, okay.

14          MR. LURIE:  We're prepared to issue corrected

15  language through the Department of Labor.  We provided some

16  draft language to the plaintiff just this morning.

17  Plaintiff's counsel provided us with a proposed order for the

18  Court which has some alternative language.  We'd be frankly

19  happy to work with that language and provide something again

20  voluntarily from the Department of Labor to its employees.

21          THE COURT:  What timetable do you propose?

22          MR. LURIE:  We could probably hammer this out in the

23  next day or two, Your Honor.

24          MS. BECKER:  That's fine with us, Your Honor.  I

25  think then maybe the remaining bone of contention would be --

1  and correct me if I'm wrong, brother counsel -- whether it

2  should take the form of an order or a corrected memorandum.

3          THE COURT:  I'll let you try to work that out.

4          MS. BECKER:  Okay.

5          THE COURT:  I'm not in a position really at this

6  point to weigh in in any way, but -- it seems to me.  I

7  just -- I have a general understanding of what's going on, but

8  I haven't really heard a response from on -- from a legal

9  standpoint on the Department of Labor.  Right?  I mean --

10         MR. LURIE:  Your Honor, I think we disagree with

11 some of the underlying legal argument in favor of the

12 corrective action, but we recognize the concern.  We want to

13 address it and so we're prepared to do so voluntarily.

14         Just with respect to whether or not the Court needs

15 to issue an order, I think we'll be able to moot the issue.

16 I don't think it's necessary --

17         THE COURT:  Okay.  Well, that's why -- I mean, I --

18 to the extent that you can't come to an agreement on whatever

19 aspects that you can't come to an agreement on, then I'll

20 expect you to provide your response because the state of the

21 record now is that the State asks that they not be required to

22 respond until -- well, just ask that they not be required to

23 respond.  At the time there was nobody representing Governor

24 Cuomo or -- I don't know.  Is the State -- is the State --

25 it's sort of interesting.  The State is also one of the --

1  going to be asked whether they want to join, but I gather

2  they're probably not.  The State *qui tam* statute is probably

3  the same as the federal.

4          What's the fraud on the State, by the way?

5          MS. BECKER:  The fraud on the State is with respect

6  to the inflated attorney's fees received by plaintiff's

7  counsel.

8          THE COURT:  By plaintiff's counsel.

9          MS. BECKER:  In the --

10          THE COURT:  Which plaintiff's?

11          MS. BECKER:  In the class action.

12          THE COURT:  I see.  All right.  Was that class

13  action in federal court or state court?

14          MS. BECKER:  Federal court.

15          UNKNOWN SPEAKER:  In the Southern District, Your

16  Honor.  That's why we're moving -- that's why we've moved to

17  transfer.

18          THE COURT:  And is the suggestion -- wasn't that --

19  I mean, I guess that the class action -- if -- to the extent

20  it resulted in an amelioration plan there was some kind of

21  settlement which was approved by the Court.

22          MS. BECKER:  I think --

23          THE COURT:  And is it your contention that the Court

24  approved a fraudulent attorney's fee award?

25          MS. BECKER:  Well, the thing is, what the Court

1   approved was a system by which the plaintiffs from the class

2   action would submit their fees.  And those fees were supposed

3   to be reviewed from someone from the Unemployment Appeals

4   Board in this instance by Judge Rold.  And when Judge Rold was

5   first --

6              THE COURT:  I guess I'm confused about which

7   plaintiffs.

8              MS. BECKER:  The --

9              THE COURT:  The class plaintiffs?

10             MS. BECKER:  The class plaintiffs, Raff and Becker.

11             THE COURT:  Oh, I see.  Raff and Becker represented

12   a class of plaintiffs.

13             MS. BECKER:  Yeah.  And so the first plain --

14   attorney's fees' letter petition that was received by Judge

15   Rold for him to review he reviewed, had serious problems with,

16   explained it to the Secretary of Labor, said that he wanted --

17   that they -- that he would not sign off on them because they

18   were not appropriate.

19             THE COURT:  I see.  Okay.

20             MS. BECKER:  Then -- so that's the New York --

21             THE COURT:  I see.

22             MS. BECKER:  -- *qui tam*.

23             THE COURT:  Okay.  I get it.  Anyway, so let me --

24   as -- let me return to the most recent issue and that is -- I

25   mean, the -- the issue about the -- what kind of corrective

19

1   action and what the form of that should be with respect to the

2   directive that was given by the Department of Labor.

3           To the extent that there are things you can't agree

4   upon in terms of the corrective action, then it seems to me

5   the next appropriate step would be for the State to respond to

6   the motion.  I'll give you a deadline for doing that.  And

7   then to give the plain -- the relator a chance to respond to

8   that.

9           So I might as well set those dates now in case you

10  can't reach agreement.  I mean, I hope you can but I might as

11  well set those deadlines.  Does that sound right?

12          MS. BECKER:  Right.  Although from what I'm hearing

13  from brother counsel is that we're relatively close and I do

14  think that the -- really, the only concern is whether there

15  ought to be an order or not.

16          And I would like to take this opportunity -- and

17  it's Jane Becker talking.  I'm sorry -- the -- to tell the

18  Court that I personally have spoken to one former judge and

19  one current judge who is about to leave.  And that judge --

20          THE COURT:  Leave?

21          MS. BECKER:  Leave the --

22          THE COURT:  The bench?

23          MS. BECKER:  The Unemployment Appeals Bureau and

24  that judge spoke to me two days ago and told me that there is

25  an atmosphere of fear because of the memorandum that was sent

1  out.  And the only -- that was the only reason that that

2  judge -- the only reason that that judge was willing to speak

3  to me was because that judge -- I'm trying not to use

4  gender -- was leaving and that judge felt that other judge --

5  other judges had expressed concern about retaliation for

6  cooperation with plaintiff's counsel.  So that's why we so

7  firmly believe that there is a need for an order from this

8  court that will give the potential witnesses the comfort that

9  they need to talk to not only our client but presumably with

10  the U.S. Attorney's Office.  And given that the time for the

11  U.S. Attorney's Office to decide whether to intervene or not

12  expires --

13            THE COURT:  It sounds to me like you're just making

14  the argument that I suggested you could make in response to

15  what Mr. Lurie is going to submit to me if you can't reach an

16  agreement.  I'm not prepared to give you a ruling on that

17  issue now.

18            MS. BECKER:  Okay.

19            THE COURT:  And that's what I was inviting you to

20  try to reach an agreement on.  I'll have to hear from

21  Mr. Lurie as to any objections he has to entering an order.

22  That's part of the things you can't resolve.  I don't know

23  whether that's going to be what you can't resolve, but let's

24  let the process work out.  It's not going to take too much

25  longer because I'm going to -- I do want to set tight

1  deadlines for doing this.

2          So if Mr. Lurie said he thinks he's not -- he's

3  going to be able to resolve it with you in the next day or so,

4  to the extent that there's something that you can't resolve in

5  the next day or so -- today is Thursday, so we're talking

6  about Friday, Monday -- so to the extent that you can't, just

7  write me a letter by Wednesday and then you can have -- I

8  don't know how much time you want to respond to Mr. Lurie's

9  letter.

10          MS. BECKER:  We should be able to respond to it by

11  next Friday.

12          THE COURT:  Okay.  So file any -- we'll call it

13  opposition to the motion that's now pending, Mr. Lurie, by

14  next Wednesday and you'll file your reply to that by Friday,

15  then I'll make a decision.  And to the extent that there are

16  alternatives that -- you know, alternative language you want

17  to, you know, submit a proposed order or proposed -- whatever,

18  you know, as part of your submissions.  Okay?

19          MR. LURIE:  Thank you, Your Honor.

20          THE COURT:  Otherwise, what else should I schedule

21  at this point?  It seems to me there's not a point in

22  scheduling anything further before me now any specific date

23  until we see how the motion to transfer works out and how any

24  motions attacking the pleadings work out.  Anybody have any

25  different view?

1            MS. BECKER:  The only -- Jane Becker.  The only

2   other thing that's pending -- and we are, in fact, working on

3   it -- is a stipulation regarding a protective order so that

4   the relator can produce to the United States Attorney's Office

5   the documents.  We have -- it's our contention that none of

6   the documents are privileged, but we understand fully that the

7   defendants have -- not may have; they have -- a different

8   perspective -- position with respect to that.

9            So we have initially sent -- because the U.S.

10  Attorney asked us for the grievance and its attachments, we

11  have already started working on an agreed upon -- a stipulated

12  protective order regarding that and the U.S. Attorney's Office

13  has received a copy of that because obviously it's the U.S.

14  Attorney who has to decide to -- whether that is acceptable in

15  terms of the U.S. Attorney's investigation.

16            And we will be providing the remainder of the

17  documents to defendants by probably this coming Monday so

18  that --

19            THE COURT:  I'm really not -- I'm not understanding

20  this very much.  To the extent that you want a protective

21  order --

22            MS. BECKER:  Um-hum.

23            THE COURT:  -- you can make a motion for one and if

24  it's plain on the face of the protective order that's

25  submitted as what is specifically going to be protected and

1   that there is a need for protection, then you can count on me

2   signing it.

3           If either of those is not clear on its -- on the

4   face of the protective order, then you're going to need to

5   explain to me -- well, first of all, the protective order is

6   going to have to -- will have to be specific about what it is

7   that's subject to the order.  And I won't sign a protective

8   order that cedes to the parties the right to designate

9   anything that they think in good faith ought to be protected.

10  You're going to have to identify with specificity what it is

11  that's to be protected.  And to the extent that it's not plain

12  to me on the face and in those documents are -- that

13  protection is warranted for those kinds of documents, then you

14  need to make some kind of submissions to demonstrate why the

15  standards for protective order as set forth in Rule 26(c)

16  apply and why the confidentiality should be met.

17          So typically medical records, personnel records,

18  those sorts of things that are usually subject to privacy

19  concerns are things that will qualify ordinarily and don't

20  require any further explanation.  If it's something beyond

21  that, well, I don't want to -- I guess I'm telling you what

22  the standards are that I will be applying to any protective

23  order that you're going to ask me to sign.

24          MR. CLEARY:  Your Honor, what I saw today -- this is

25  Kevan Cleary from the Government -- what I say today because I

1  just got it this morning right before our session today, it

2  has -- it's very extensive.  I mean, it has -- this is not a

3  waiver of subject matter jurisdiction by producing the

4  document.  I always understood you cannot waive subject matter

5  jurisdiction no matter what you say.

6          UNKNOWN SPEAKER:  Attorney/client.

7          THE COURT:  That's correct.  There's no --

8          MR. CLEARY:  Yeah, that's in here.

9          THE COURT:  The matter jurisdiction is always for

10  the Court to determine --

11          MR. CLEARY:  Yes.

12          THE COURT:  -- and nobody can say --

13          MR. CLEARY:  Nobody can waive it.

14          THE COURT:  Nobody can waive it.

15          MR. CLEARY:  Okay.  Now, the other thing is, it

16  has --

17          THE COURT:  I don't know -- I don't -- look, do we

18  need to go into detail now?  I mean --

19          MR. CLEARY:  No, no, Judge, if you don't want to

20  hear it.

21          THE COURT:  I'd like to let you try to work these

22  things out and because I don't know that -- I mean, unless you

23  have a question about what should be subject to the order.

24          MR. CLEARY:  Well, they have a -- they revived the

25  seal thing where everything that mentions this grievance has

1  to be filed under seal, so here we go again.

2          THE COURT:  And which grievance are we talking

3  about?

4          MR. CLEARY:  This grievance they're going to produce

5  to the United States Attorney that anybody who makes --

6          THE COURT:  About --

7          MR. CLEARY:  -- writes -- makes a motion or writes a

8  letter and references it all has to be filed under seal.  This

9  is onerous.

10          THE COURT:  Well, that's why I may not sign a

11  protective order.  Look --

12          MS. BECKER:  Your Honor --

13          THE COURT:  I don't know exactly what it is that

14  you're talking about.  You're going to have to see if you can

15  work out what it is you want to make subject to the order.  I

16  thought Ms. Becker was saying you wanted it subject to an

17  order.  Well, you know, and I don't know what grievance you're

18  talking about even.  I mean, so --

19          MR. CLEARY:  The judge filed the grievance.

20          MR. HAWKINS:  Your Honor, could I --

21          MS. BECKER:  The only reason --

22          MR. HAWKINS:  Howard Hawkins from Cadwalader.  Could

23  I be heard on this?

24          THE COURT:  You might as well.

25          MR. HAWKINS:  Thank you.

1          THE COURT:  Everybody else has been -- well, not

2    everybody.

3          MR. HAWKINS:  Yeah.

4          THE COURT:  You haven't yet been heard, so you can

5    talk.

6          MR. HAWKINS:  Thank you, Your Honor, for Governor

7    Cuomo.  And this issue is, again, for the State or the

8    Department of Labor.

9          The grievance in question is Judge Rold's grievance

10   concerning the circumstances of his termination, so he wrote a

11   grievance to the Department of Labor complaining that he had

12   been fired.  He was chief judge of the Unemployment

13   Compensation Board.  He was also general counsel of that

14   Board.  We have reviewed the substance of the grievance and we

15   believe strongly on behalf of the State and of the Department

16   of Labor that there is privileged information in his grievance

17   relating to the class action because, as Ms. Becker explained,

18   he was -- he says he was terminated because of positions he

19   took with respect to how the State was dealing with that class

20   action.

21          This, by the way, is the class action in the

22   Southern District to which we suggest that this Court should

23   transfer this case.  It would be over there with the same

24   court that has the class action.

25          THE COURT:  With the same judge, you mean?

1          MR. HAWKINS:  Yes.  Judge Pres -- Chief Judge

2     Prescott.

3          THE COURT:  I see.  In other words, it would be

4     your -- it is your contention that it's a related case in a

5     sense and to these -- the class action that --

6          MR. HAWKINS:  Yes.

7          THE COURT:  -- that apparently in some way gives

8     rise -- well, I guess it does in a major way give rise to the

9     claims here.

10         MR. HAWKINS:  Absolutely.

11         THE COURT:  Not all the claims but some of the

12    claims.  Okay.  I understand the position.

13         MR. HAWKINS:  So that is why --

14         THE COURT:  So you're the one that has the privilege

15    concern.

16         MR. HAWKINS:  Absolutely.  The Department of Labor

17    of the State of New York holds the attorney/client privilege

18    with respect to its former employee Judge Rold who, of course,

19    cannot make the privilege; it belongs to the State.

20         THE COURT:  So these are complicated issues and I'm

21    not going to be able to deal with them --

22         MR. HAWKINS:  Well --

23         THE COURT:  -- in the abstract.

24         MR. HAWKINS:  All I want to say, Judge, is we

25    propose a workout of this --

1          THE COURT:  Okay.

2          MR. HAWKINS:  -- where we'll give the document over

3    to the U.S. Attorney's Office.  We're pleased to let them have

4    it and do whatever they want with it.  We just want an

5    agreement that that doesn't waive attorney/client privilege.

6          THE COURT:  Okay.

7          MR. HAWKINS:  And if there are concerns about seal

8    or not, you know, we can work on that, too.  We -- all we want

9    is not to have their -- not to there be a subject matter

10   waiver of attorney/client privilege.

11         THE COURT:  Subject matter waiver.  Now you're

12   talking about subject matter -- not talking about subject

13   matter jurisdiction.  You're talking about subject matter

14   waiver --

15         MR. HAWKINS:  Yes, sir.  Yes, sir.

16         THE COURT:  -- as it applies to the privilege.

17   Okay.

18         MR. HAWKINS:  Yes, Your Honor.

19         THE COURT:  Again, these are pretty complicated

20   issues.  How far the privilege extends if you're going to ask

21   me to sign a protective order extending a privilege to

22   these -- to whatever it is that your -- well, at this point I

23   don't know how much of the grievance -- I mean, maybe it's the

24   entire document, maybe it's all the documents related to the

25   grievance.  I just don't know how broadly you want to assert

1  the privilege and -- but I will have, it seems to me, to make

2  at least some preliminary assessment about whether there is a

3  valid claim of privilege that would attach to the documents

4  and sounds like --

5          MR. HAWKINS:  Your Honor, we're --

6          THE COURT:  It sounds like you may be in a position

7  to make that case.  I --

8          MR. HAWKINS:  We're pleased to make that case and

9  we're pleased to submit it in camera.  We are suggesting a

10  work-around of the issue.

11          THE COURT:  Right.

12          MR. HAWKINS:  By simply having all the parties agree

13  that whether or not it's privileged there's no subject matter

14  waiver, which is our own concern.

15          THE COURT:  Yeah.  So that you don't -- you mean, by

16  producing the document you're not giving up the argument that

17  other matters related to that document are no longer

18  privileged.

19          MR. HAWKINS:  Exactly.

20          THE COURT:  Sounds like a pretty reasonable work-

21  around.  I'll leave it up to you to try to work it out.

22          MR. HAWKINS:  Thanks, Your Honor.

23          MS. BECKER:  Your Honor, more than anything all I

24  wanted to do was just mention it because it's something that

25  would more traditionally come up in discovery, but in this

30

1    case has come up at this early stage because it's some --

2         THE COURT:  The Government needs it in order to make

3    its assessment about whether -- about which -- whether to step

4    into the case or not.

5         MS. BECKER:  Exactly.

6         THE COURT:  Yeah.  So I mean, I agree that that's an

7    issue that ought to be addressed promptly or as promptly as

8    possible now while there's other things still percolating

9    that -- you know, in other words, get that -- let's try to get

10   that out of the way so that it doesn't become a barrier once

11   the other issues are resolved -- a barrier doesn't become a

12   problem in terms of moving the case forward.

13        All right.  What else?  No, anything?  And nobody

14   disagrees that there's no point -- well, that's a lot of

15   negatives.  There's -- is there any -- does anybody believe

16   that there's a point in my scheduling at this point, a

17   specific date for another conference?  Okay.  All right.

18        So I'll -- we've got the briefing in place to the

19   extent it may be necessary with respect to the motion and if I

20   need argument -- further argument on that I'll bring you in,

21   but otherwise I intend to -- if I have to issue a ruling it

22   will be on paper, okay?  Thank you very much.

23        ATTORNEYS:  Thank you, Your Honor.

24        (Proceedings concluded at 11:41 a.m.)

25                    *  *  *  *  *  *

31

1        I certify that the foregoing is a court transcript

2  from an electronic sound recording of the proceedings in the

3  above-entitled matter.

4

5

6  _____

7        Ruth Ann Hager, C.E.T.**D-641

8  Dated:   November 14, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25