UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA, *ex rel.*, STATE OF
NEW YORK, *ex rel.*, and WILLIAM J. ROLD               CV11-6374

                          Plaintiffs,

                  -against-

RAFF & BECKER, LLP; DAVID A. RAFF,
ROBERT L. BECKER, M. PATRICIA SMITH,
LEONARD POLLETTA, and ANDREW M. CUOMO

                          Defendants.
-----------------------------------------------------------------------X

## DEFENDANTS' RAFF & BECKER, LLP, DAVID A. RAFF AND ROBERT L. BECKER MEMORANDUM OF LAW IN RESPONSE PLAINTIFF-RELATOR'S OPPOSITION AND IN FURTHER SUPPORT OF THEIR <u>MOTION TO CHANGE OF VENUE</u>

LEWIS BRISBOIS BISGAARD & SMITH, LLP
Attorneys for Defendants
RAFF & BECKER, LLP, DAVID A. RAFF
AND ROBERT L. BECKER
77 Water St., 21st Floor
New York, NY 10005
T:(212) 232-1300
F:(212)232-1399
File No.:50013-1654

Of Counsel:

Mark K. Anesh

4848-7588-8145.1

## TABLE OF CONTENTS

1. INTRODUCTION……………..……………………………………………………………2

2. RESPONSE STATEMENT OF FACTS…………………………………………………….3

3. ARGUMENT………………………………………………………………………………..4

4. CONCLUSION….....………………………………………….…………………...…………8

Case 1:11-cv-06374-DLI-VVP   Document 57   Filed 11/21/12   Page 2 of 10 PageID #: 663

## INTRODUCTION

Defendants Raff & Becker, LLP, David A. Raff and Robert L. Becker (hereinafter referred to as the "Law Firm Defendants") submit this memorandum of law in response to Plaintiff-Relator William J. Rold's ("Plaintiff") opposition to Law Firm Defendants' motion to transfer venue from the United States District Court for the Eastern District of New York to the United States District Court for the Southern District of New York, before Chief Judge Loretta A. Preska.

Plaintiff argues throughout his opposition memorandum of law that *Barcia v. Sitkin*, 79 Civ. 5831 and *Municipal Labor Committee v. Sitkin* 79 Civ. 5899 (collectively, *"Barcia"*) are not at issue in his Complaint, i.e., that his Complaint and those cases are entirely separate and that they are not inextricably intertwined. Plaintiff's arguments contradict the allegations in his Complaint and are nothing more than a smoke screen or shell game intended to divert the Court's attention from the actual assertions he makes in his Complaint, which question the Amelioration Plan and the integrity of the Law Firm Defendants as class counsel.

Moreover, the issue is not, as Plaintiff characterizes it, whether he seeks to directly challenge or change any of the orders or stipulations in the *Barcia* case. Rather, the issue is whether findings that the Court makes in Plaintiff's case could affect implementation and enforcement of the *Barcia* Court's orders or affect the status of Law Firm Defendants as designated class counsel. Under these circumstances, appropriate venue lies in the Southern District where that Court maintains continuing jurisdiction of the *Barcia* case.

## RESPONSE STATEMENT OF FACTS

Plaintiff protests that all of the allegations and claims in his Complaint that reference the *Barcia* case serve as merely a backdrop for his legal claims against all defendants. *See* Plaintiff-Relator Memorandum of Law in Opposition to Change of Venue dated November 9, 2012 ("Opp. Mem.") at 15, 18-20. That position is contrary to the specific factual allegations set forth in his complaint, where the vast majority of his allegations refer to the *Barcia* case, the due process requirements of the orders in that case, monitoring by the Law Firm Defendants, the Amelioration Plan, the Plan's effects upon the Unemployment Insurance Appeal Board, the Law Firm Defendants' billings for monitoring and other case related legal work, and Appeal Board decisional delays caused by the Amelioration Plan. As to the Law Firm Defendants, Plaintiff alleges, among other things, that:

- "The Amelioration Plan does not benefit the [*Barcia*] class" and "the Law Firm Defendants will be able to perpetuate the litigation indefinitely and divert enormous resources for their own purposes." (Complaint ¶ 131) *see also id.* ¶ 7 (Defendants David A. Raff and Robert L. Becker were "personally involved in the Due Process Litigation" and "benefitted personally from their unlawful conduct");

- The Law Firm Defendants' monitoring letters "generated attorneys' fees [and] did not serve as a useful tool for monitoring compliance [with the *Barcia* orders]" (*id.* ¶ 53);

- "[A]doption [of the Amelioration Plan] was contrary to the public interest" (*id.* ¶ 105), and "has caused . . . severe delays in timely decisions of unemployment cases in New York (*id.* ¶ 171);

- "Law Firm Defendants . . . have been silent, despite non-compliance with the [Amelioration] Plan" (*id.* ¶ 136);

- The Law Firm Defendants submitted billings for *Barcia* monitoring that included "inflated charges" and other improper billing practices (*id.* ¶¶ 145 – 147, 176) and they have "churn[ed] the Due Process Litigation [to] further their own profit" (*id.* ¶ 174);

- The Law Firm Defendants have submitted their billings "without presenting claims to the Court for review, as required by Rule 23 of the Federal Rules of Civil Procedure" (*id.* ¶ 177).

- The Law Firm Defendants were in collusion with Government Defendants to obtain a $410,000 "signing bonus" (*id.* ¶159), without notice to the class (*id.* ¶ 137); *see also id.* ¶ 179 (referring to payment as a "bonus award.");

- Conduct of the Law Firm Defendants' billing practices in *Barcia* "has resulted in millions of dollars in unjust enrichment of the Law Firm Defendants at the expense of . . . the unemployed of New York" (*id.* ¶ 189);

- The Law Firm Defendants conspired with Government Defendants "to prevent him from attending and testifying about the Due Process Litigation matter pending in a federal court" (*id.* ¶ 201);

- "There is a conflict of interest between the Law Firm Defendants' attorneys' fees and the protection of the class" (*Id.* ¶ 160, *see also* ¶ 157);

- The Law Firm Defendants have submitted and caused to be paid "false and fraudulent claims" related to their monitoring work under the *Barcia* orders (*id.* ¶¶ 168-171, 174, 176).

## ARGUMENT

### *BARCIA* AND THE INSTANT ACTION ARE INEXTRICABLY INTERTWINED AND SHOULD RESULT IN THIS CASE BEING TRANSFERRED TO THE *BARCIA* COURT IN THE SOUTHERN DISTRICT

**A. The Allegations in Plaintiff's Complaint are Intertwined with the *Barcia* Case in the Southern District**

Plaintiff argues that his complaint is not a collateral attack upon the Amelioration Plan and that his allegations are not inextricably intertwined with the *Barcia* orders. *See* Opp. Mem. at 15, 18-20. Plaintiff's argument is without merit.

The facts, as set forth above, show an incontrovertible linkage between the two. Indeed, to the extent that any finding against the Law Firm Defendants about: (1) how they have carried out their substantive monitoring obligations under the *Barcia* orders, (2) whether they have properly represented the interests of the class, (3) the manner in which they have worked with

Government Defendants regarding the implementation of the Amelioration Plan, (4) whether their conduct has resulted in improper delays in determining unemployment claims, (5) their use of billing judgment in submitting attorney's fees billings, and (6) whether they have sacrificed the interests of the class to enhance their own financial interests, necessarily involve the *Barcia* Court. *See, e.g., In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1452, 1456-57 (E.D.N.Y. 1985) (in class actions, "the court has an obligation to protect the rights of the class members [and] has supervisory authority over attorneys who practice before it and thus an obligation to prevent breaches of professional ethics."), *aff'd in part, rev'd in part*, 818 F2d 179, 182 (2d Cir. 1987). Thus, the Southern District is the more appropriate venue to address the issues raised by the Plaintiff's allegations.

As an example, Plaintiff alleges that Law Firm Defendants' monitoring "did not serve as a useful tool for monitoring compliance [with the *Barcia* Consent Judgment]" (Complaint ¶ 53); "The Amelioration Plan does not benefit the [*Barcia*] class [and] Law Firm Defendants will . . . divert enormous resources to their own purposes" (*id.* ¶ 131); "[A]doption [of the Amelioration Plan] was contrary to the public interest" (*id.* ¶ 105), and "has caused . . . severe delays in timely decisions of unemployment cases in New York (*id.* ¶ 171); and "[t]here is a conflict of interest between the Law Firm Defendants' attorneys' fees and the protection of the class" (*Id.* ¶ 160, *see also* ¶ 157). With the Law Firm Defendants' conduct in the *Barcia* case put directly in issue by Plaintiff, this Court will have to evaluate the suitability of their conduct with regard to the merits and value of their monitoring activities, the Amelioration Plan, the propriety of their representation of the class, and their billing practices. In fact, pursuant to the *Barcia* court's Order dated September 27, 1984 (*see Rold* Ex. 2 at 3, ¶ 6), all challenges to the Law Firm Defendants attorneys' fees are to be made before the *Barcia* court. As a qui tam relator, Plaintiff

purports to 'stand in the shoes' of New York State with respect to this questioning of the Law Firm Defendants billing practices and attorneys' fees. The prosecution of Plaintiff's Complaint in the Eastern District, and findings of fact with regard to the *Barcia* related issues, could effectuate changes to existing orders and existing stipulations, or to the relationship between the Law Firm Defendants and the class they represent – which are matters that should be addressed by the *Barcia* Court in the Southern District and presiding Chief Judge Preska.

Plaintiff concocts a "straw man" theoretical legal basis for the Law Firm Defendants' use of the term "inextricably intertwined" (*see* Opp. Mem. at 18-19) that has no basis in reality. Plaintiff's effort is a classic case of diversion. None of the named defendants in the suit have cited or relied, directly or indirectly, upon the *Rooker-Feldman* doctrine, which is inapplicable to this case. The term is simply a descriptive phrase that captures the reality that *Barcia* and the instant lawsuit are so intertwined that they cannot be separated for purposes of addressing Plaintiff's Complaint.

Plaintiff's factual allegations allow no other conclusion than the two matters are inseparable. In consideration of Plaintiff's scores of allegations in his Complaint that explicitly tie the alleged wrongful conduct of the Law Firm Defendants to their representation of the class in the *Barcia* case, it cannot be reasonably argued that the Court's factual findings in this case will have no effect on the *Barcia* case and the role of the Law Firm Defendants as class counsel.

### B. Ensuring Fair Hearings Implicates the Companion Case of *Dunn*

The issue of what the steps that need to be taken in order to ensure fair hearings also implicates a Southern District companion case to *Barcia*, i.e., *Dunn v. New York State Department of Labor*, in which the Law Firm Defendants serve as counsel for intervenor-

plaintiffs. *See Dunn,* 594 F. Supp 239, 242-3 (S.D.N.Y. 1984); *see also Dunn,* 1994 WL 48799, at *3 (S.D.N.Y. Feb. 16, 1994).

Plaintiff argues that curing any New York State unemployment insurance system of constitutional deficiencies is purely a New York State issue. *See* Opp. Mem. at 15. That assertion ignores the fact that the Social Security Act, 42 U.S.C. § 503(a)(3), requires fair and impartial hearings for unemployment benefits. The Consent Judgment, and subsequent orders entered in the *Barcia* case, specify what those fair hearing requirements are. As Plaintiff has taken pains to point out, this case has been going on for three decades and there have been numerous contempt and enforcement orders entered. To suggest that the federal government is unaware of this case is simply ludicrous. *See* Opp. Mem. at 11.

"The unemployment compensation program is jointly operated by the federal and state governments." *Dunn v. New York State Dep't of Labor*, 474 F. Supp. 269, 272 (S.D.N.Y. 1979). Complying with federal fair hearing requirements is part and parcel of the federal funding scheme to the states. *See Dunn,* 594 F. Supp 239, 242-3 (S.D.N.Y. 1984); *Barcia v. Sitkin*, 367 F.3d 87, 92 (2d Cir. 2004). Moreover, "there must be a prudent balance between the issuance of timely decisions and requirements for fair hearings." *Dunn,* 474 F. Supp. at 242; *see also Dunn,* 1994 WL 48799, at *3 (S.D.N.Y. Feb. 16, 1994). It was in the funding and "prudent balance" contexts that Judge Duffy, a Judge in the Southern District of New York, joined the United States Secretary of Labor as a party based upon a motion made by the *Barcia* plaintiffs (referred to in *Dunn* as "Municipal Labor Committee" or "MLC"). *Id.* Thus, the federal government, having been joined as a party to litigation in the Southern District that was directly concerned with both the timeliness of unemployment decisions and the statutory federal fair hearing

requirements, is no stranger to the conflicting obligations facing the New York State Department of Labor and Unemployment Insurance Appeal Board.

## CONCLUSION

For the foregoing reasons, Defendants Raff & Becker, LLP, David A. Raff and Robert L. Becker respectfully request that this Court grant the instant motion pursuant to 28 U.S.C. Section 1404(a), transferring venue of the instant action to the Southern District of New York before Chief Judge Loretta A. Preska, together with such other and further relief that it deems just and proper.

Dated: New York, New York
       November 20, 2012

                                      Respectfully submitted,
                                      LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: _____
        Mark Anesh, Esq. (MA 8303)
        Attorneys for Defendants
        RAFF & BECKER, LLP, DAVID A. RAFF,
        and ROBERT L. BECKER
        77 Water Street, Ste. 2100
        New York, NY 10005
        (T):212-232-1300
        (F):212-232-1399

TO:

LAW OFFICES OF JANE BECKER WHITAKER
416 Ponce de Leon Avenue
Hato Rey, P.R. 00918
Attorneys for Relator
William J. Rold
(787) 754-9191
janebeckerwhitaker@yahoo.com

LAW OFFICES OF STEVEN A. ROSEN
271 Madison Avenue, Ste. 1404
New York, NY 10016
Attorneys for Relator
William J. Rold
(212) 599-3970
sar@sarlaw.net

Adam R. Lurie, Esq.
Howard W. Hawkins, Esq.
Cadwalader, Wickersham, & Taft
Counsel for Andrew Cuomo
One Financial Center
New York, NY 10281
Howard.hawkins@cwt.com

Emery Celli Brinckerhoff & Abady, LLP
Andrew G. Celli, Jr., Esq.
Andrew F. Wilson, Esq.
Counsel for M. Patricia Smith
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212)763-5000
AWilson@ecbalaw.com

Hanan B. Kolko, Esq.
Melissa S. Woods, Esq.
Meyer Suozi English & Klein, P.C.
Counsel to Leonard Polletta
1350 Broadway, Ste. 501
New York, NY 10018
mwoods@msek.com

UNITED STATES ATTORNEY'S OFFICE,
EASTERN DISTICT OF NEW YORK
Richard Hayes, Esq.
271 Cadman Plaza East
Brooklyn, NY 11201
Attorneys for US Department of Justice
richard.hayes@usdoj.gov